IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG


DENNIS RYDBOM,

        Petitioner,

v.                                  Case No. 6:07-cv-00711

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

        Respondent.

PROPOSED FINDINGS AND RECOMMENDATION

On November 7, 2007, Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (docket sheet document # 2). This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On November 19, 2007, the undersigned ordered Respondent to file an answer or other response to the instant petition by January 7, 2008, and Petitioner to file a reply, if any, by February 7, 2008. (# 5).

After several motions for extension of time were granted, on April 2, 2008, Respondent filed a Response to Petition for Writ of Habeas Corpus (# 11), a Motion to Dismiss Petition for Failure to Exhaust State Remedies, with accompanying exhibits (# 12), and a

Memorandum of Law in support thereof (# 13). Respondent's documents assert that Petitioner has not exhausted the available state court remedies concerning any of the seven claims contained in the instant section 2254 petition. Respondent further asserts that Petitioner presently has a Petition for a Writ of Habeas Corpus pending in the Circuit Court of Wood County; thus, making Petitioner's present section 2254 petition premature.

On April 9, 2008, Petitioner filed a Response in Opposition to Respondent's Motion to Dismiss" (hereinafter "Petitioner's Response") (# 14). On October 10, 2008, Respondent filed a reply brief, as ordered by the undersigned. (# 18). On October 28, 2008, Petitioner was granted leave to file a sur-reply. (# 19). These documents will be discussed in greater detail _infra_. This matter is ripe for determination.

## PROCEDURAL HISTORY

### A.   PETITIONER'S STATE PROCEEDINGS.

On or about July 11, 1997, a Wood County grand jury indicted Petitioner on one count of Murder in the First Degree (Case No. 97-F-87-R). Petitioner was convicted of that charge, following a jury trial, on February 6, 1998. An order of conviction was entered on April 3, 1998. (# 12, Ex. 2). On April 17, 1998, the trial court denied Petitioner's Motion for a Judgment of Acquittal and Motion for a New Trial, and sentenced Petitioner to life in prison, without mercy. A sentencing order was entered on May 27, 1998.

2

(<u>Id.</u>, Ex. 3).

On February 10, 1998, Petitioner, by counsel, filed a Petition for Appeal in the Supreme Court of Appeals of West Virginia (the "SCAWV") asserting the following grounds for relief:

1. Denied defendant's right to a speedy trial under Section 62-2-12 and 62-3-1, West Virginia Code, and the West Virginia Constitution and the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

2. Denied defendant's rights under the Fourth Amendment to the United States Constitution and Section 6 Article III of the West Virginia Constitution by:

   A. Denying defendant's motion to suppress evidence obtained as a result of the search of defendant's residence and seizure of defendant's property on May 28, 1996 in Marietta, Ohio.

   B. Denying defendant's motion to suppress evidence obtained as a result of the search of defendant's residence and seizure of defendant's property on November 12, 1996, in Phoenix, Arizona.

3. Admitted testimony concerning defendant's travel from Marietta, Ohio to Athens, Ohio. (Order dated December 3, 1997.)

4. Admitted statement made by defendant to Scott Zeoli concerning "going back to his old ways of thinking" (T-1-8, p. 335, 767-769, 782).

5. Admitted the hearsay testimony of Lynn Noel (T-1-13, p. 1175-1180) and Catherine Rees (T-1-28, p. 2568) reciting statements made by victim.

6. Admitted the following evidence which was irrelevant, unfairly prejudicial, and confusing to the jury contrary to Rules 401, 402 and 403, West Virginia Rules of Evidence:

A.   Writings copied from Carlos Casteneda (T-1-15, p. 15-58).

B.   Defendant's college journal (T-1-15, p. 15, 49, 53-59).

C.   <u>The Handbook on Poisoning</u>, a book found in the Marietta College library. (T-1-6, p. 242, T-1-16, p. 1542).

D.   Five books on death and dying (T-1-20, p. 1685).

E.   A poem (T-1-10, p. 1683).

F.   Photographs of tombstones (T-1-28, p. 2695).

G.   "Thanks for hiding the body, man."

H.   Evidence that DNA was defendant's semen (T-1-8, p. 327).

I.   Opinion testimony of Howard Rowsey of the reasons why he believed defendant was guilty of murder. (T-1-22, p. 2295-2298, 2336-2348).

J.   Photograph of phone in defendant's bedroom.

K.   Sixty (60) pieces of lingerie (T-1-21, p. 2032, 2692).

L.   Receipt from Revco drugstore showing the purchase of sleeping pills (T-1-15, p. 22-23, T-1-p. 2167).

M.   Pillowcase containing lingerie (T-1-21, p. 2040).

N.   A CD titled "The Yearning" (T-1-20, p. 1681).

O.   1992 photograph of victim in underwear (T-1-28, p. 2696).

P.   Burgundy notebook (T-1-20, p. 1683).

4

Q.   Three photographs of the victim (T-1-21, p. 2042).

R.   A receipt from the Apex store (T-1-14, p. 1379).

S.   Key fob with a Mazda RX-7 (T-1-21, p. 2031, 2033).

T.   Cards and letters (T-1-28, p. 2704, T-2-2, P. 3381).

U.   The victim's college I.D. card (1-15, Conley, p. 7).

V.   Algebra books belonging to the victim (T-1-28, p. 2701).

W.   Receipt from Big Bear grocery (T-1-15, p. 22-23).

7.   Denied defendant's motion for a suppression hearing concerning reliability of the identification of lingerie seized from the defendant.

8.   Failed to conduct a Rule 404(b) hearing.

9.   Denied defendant's motions for judgment of acquittal and motion for new trial (T-2-2, p. 2705, Order 2-2-1998; Order 5-27-1998).

Due to space limitations, the defendant will defer argument upon the following grounds, while preserving them for the purpose of this appeal:

DISCOVERY RULINGS

10.   Denied defendant's motion for Ohio Grand Jury Minutes in not ordering the prosecutor to obtain them from the State of Ohio.

11.   Denied defendant's Motion for Bill of Particulars.

12.   Denied defendant's motion for early disclosure of witness statements and Grand Jury Minutes.

13.   Denied defendant's motion to compel disclosure of information seized or taken by police from victim's

residence and place of business.

14. Denied defendant's motion to suppress West Virginia State Police CIB report concerning breast swabs.

TRIAL RULINGS

15. Failed to allow defendant alternative juror strikes as required by Section 62-3-3, WV Code, 1931 as amended.

16. Denied defendant's motion to cross the street from the jail to the court without handcuffs. (Order dated January 14, 1996).

17. Denied defendant's motion to limit the scope of cross examination of the defendant (T-1-8, p. 678, 1/9, p. 787, Order dated January 9th, 1998).

18. Denied defendant's motion to either sequester Sgt. Meek of the Marietta Police Department, or else require the prosecutor to call him as the first witness (T-1-9, p. 788-790, and Order dated January 6, 1996).

19. Overruled defendant's objection to prosecutor's questions on *voir dire* concerning mercy (T-1-8, p. 321-5).

20. Denied defendant's motion to poll the jury for media influence.

21. Denied defendant's motion for sanctions for non-disclosure of medical evidence (T-1-8, p. 334, 657-9, 666-677).

22. Denied defendant's motion for access to a law library. (Order entered September 11, 1997.)

23. Denied defendant's motion for change of venue. (Order entered the 27th day of August, 1997).

24. Admitted the testimony of Trooper Ted Smith (T-1-21, p. 2061, 2062).

25. Admitted the testimony of Sharon Rowsey reciting victim's statements made years before her death (T-1-22, p. 2253-55).

DEFENDANT'S EVIDENCE EXCLUDED OR PRECLUDED

The court erroneously excluded or precluded the following
evidence sought to be admitted by the defendant:

26.  Evidence that a R. Lott was a viable suspect (T-1-
     28, p. 2547-2563).

27.  Evidence that a D. Tewksbury was a viable suspect
     (T-1-28, p. 2800, T-1/30, p. 3121, 3129).

28.  Exhibit No. 63 (T-1-30, p. 3224).

29.  Denied admission of defendant's Exhibit No. 29, the
     first death certificate for the victim (T-1/19, p.
     996, 1001, 1010).

30.  Denied admission of defendant's Exhibits Nos. 51,
     52 and 53, being photographs of the Shopping Mall
     and Victoria's Secret store in Arizona where he
     purchased items of lingerie.

31.  Limited the testimony of D. Williamson to
     statements made by the victim pertaining only to
     Saturday, the day on which the crime occurred. (T-
     p. 2754).

32.  Denied defendant's motion to approve expense to
     employ a certain psychologist with expertise in the
     area of identifications.

33.  Denied defendant's motion to suppress statements
     made by defendant to police officers during the
     Arizona search and seizure.

INSTRUCTIONS

The court erroneously gave the following instructions:

34.  Lesser included offenses of Murder 2nd degree and
     voluntary manslaughter. (State Instr, # 1, T-2-2,
     p. 2264, T-2/3, p. 3408-3410).

35.  Venue for murder prosecution when death occurred
     outside of the country [sic; county] where the act
     occurs. (State Instr. # 3, T-2-3, p. 3410).

36.  Murder by poisoning. (State Instr. # 1, T-2-3, p.

3408).

## PROSECUTORIAL MISCONDUCT

37. The prosecutor's characterizations of the defendant as a "malignant animal" and a "coward" were inflammatory and unduly prejudicial. (T-2/3, p. 3414, 3423).

38. The prosecutor made statements asserting a personal opinion or vouching the credibility of witnesses and the guilt of the defendant. (T-2/3. p. 3452, 3455).

39. The prosecutor referred to and built an argument upon evidence that was not within the record or fairly deductible therefrom (T-2/3, p. 3420, 3421, 3422, 3424, 3426, 3443, 3445, 3451, 3456, 3460).

40. The prosecutor made improper references to defendant's sexual behavior. (T-2/3, p. 3439, 3441, 3442, 3445, 3459).

41. The prosecutor in rebuttal unfairly exceeded the scope of defendant's closing argument.

42. The prosecutor made statements amounting to a comment on the defendant's failure to testify. (T-2-3, p. 3445, 3446, 3447, 3451).

## MOTIONS FOR ACQUITTAL

43. Denied defendant's motion to dismiss at close of prosecutor's opening statement due to failure to allege facts constituting a *prima facie* case of murder against the defendant. (T-1-3, p. 726).

IV.  POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR APPEAL.

1. Denied defendant's right to a speedy trial by denying defendant's motion to dismiss the indictment for failure to conduct a speedy trial by granting, over objection, the prosecution's motion to continue the November 3, 1997, trial date, and by denying defendant's motions to dismiss the indictment for failure to conduct a speedy trial.

8

(<u>Id.</u>, Ex. 4).  The SCAWV refused the Petition for Appeal on June 1, 1999.

On January 15, 1999 (while Petitioner's Petition for Appeal was pending), Petitioner filed a Petition for a Writ of Habeas Corpus in the Circuit Court of Wood County.  (<u>Rydbom v. Merritt</u>, Case No. 99-P-9-R).  (<u>Id.</u>, Ex. 8).  On March 9, 1999, the Circuit Court dismissed the habeas corpus petition as premature, in light of Petitioner's pending appeal.  (<u>Id.</u>, Ex. 9).

On December 13, 1999, Petitioner filed a second Petition for a Writ of Habeas Corpus in the Circuit Court of Wood County. (<u>Rydbom v. Kirby</u>, Case No. 99-P-228).  (<u>Id.</u>, Ex. 6).  On February 23, 2000, the Circuit Court dismissed the petition as insufficient under Rule 2(b) of the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings, which became effective on December 13, 1999 (the same day Petitioner filed his second petition). (<u>Id.</u>, Ex. 7).  Petitioner did not appeal this decision.

On June 9, 2000, Petitioner filed a third Petition for a Writ of Habeas Corpus in the Circuit Court of Wood County.  (<u>Rydbom v. Kirby</u>, Case No. 00-P-62).  (<u>Id.</u>, Ex. 10).  That habeas corpus petition remains pending before the Circuit Court.  Petitioner has been proceeding <u>pro se</u> in that matter with "advisory" counsel appointed by the court.

On May 3, 2007, Petitioner filed a petition for post-conviction relief in the SCAWV.  On June 27, 2007, the SCAWV

entered an Order construing Petitioner's petition as a Petition for a Writ of Mandamus and directed the respondent (Judge Jeffrey B. Reed) to show cause why the writ should not issue. (<u>State ex rel. Rydbom v. Reed</u>, No. 33507). (<u>Id.</u>, Ex. 5).

On October 22, 2007, the SCAWV dismissed the mandamus action as being moot, in light of orders entered by Judge Reed on July 16 and 17, 2007. (<u>Id.</u>) According to the docket sheet for Petitioner's third habeas corpus matter (Case No. 00-P-62), the Order entered on July 17, 2007, set a hearing on August 14, 2007. The August 14, 2007 hearing was a status conference during which it was ordered that Petitioner was to be provided with numerous documents from his Circuit Court file, including his post-sentencing transcripts. On March 21, 2008, Joseph G. Troisi was appointed as new advisory counsel for Petitioner. No omnibus hearing has occurred and no final order has been issued in that habeas corpus proceeding.

### B.   PETITIONER'S FEDERAL PETITION

In the instant section 2254 petition, Petitioner raises issues that he has divided into seven parts, which are characterized as follows:

1.   Speedy trial violations.

2.   Representation issues (includes state interference and "disloyal attorneys").

3.   Search and seizure issues.

4.      Two-state tag team (concerning issues of prosecution by both Ohio and West Virginia).

5.      Hearsay issues.

6.      Trial by media (issues concerning pre-trial publicity and jury selection).

7.      Partisan judge.

(# 2).

## ANALYSIS

Section 2254(b)(1)(A) of Title 28 of the United States Code, states that a petition for a writ of habeas corpus filed in a federal district court by a prisoner in state custody shall not be granted, unless it appears that the applicant has exhausted the remedies available in the state courts, or if the state has waived the exhaustion requirement.  28 U.S.C. §§ 2254(b)(1)(A), (b)(3).

In West Virginia, prisoners may exhaust their available state court remedies either by stating cognizable federal constitutional claims in a direct appeal, or by stating such claims in a petition for a writ of habeas corpus in a state circuit court, pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the SCAWV.  Moore v. Kirby, 879 F. Supp. 592, 593 (S.D. W. Va. 1995); McDaniel v. Holland, 631 F. Supp. 1544, 1545 (S.D. W. Va. 1986).  A prisoner may also exhaust the state court remedies by filing a petition for a writ of habeas corpus filed under the original jurisdiction of the SCAWV. However, an original jurisdiction petition that is denied without

11

an indication that the denial is with prejudice, following a determination on the merits, will not exhaust the prisoner's state court remedies.  See Moore, 879 F. Supp. at 593; McDaniel, 631 F. Supp. at 1546; see also, Meadows v. Legursky, 904 F.2d 903, 908-909 (4th Cir. 1990)(abrogated on other grounds, Trest v. Cain, 522 U.S. 87 (1997)).

Respondent's motion asserts that all of the claims contained in Petitioner's section 2254 petition are unexhausted because Petitioner did not raise federally cognizable constitutional claims in his direct appeal, he did not appeal the dismissal of his prior Circuit Court habeas corpus petitions, and his third Circuit Court habeas corpus petition is still pending.   (# 13 at 10). Respondent's Memorandum of Law further states:

> Although Petitioner did petition for a direct appeal, his grounds for relief were firmly rooted in state law, and were not federal constitutional claims. These included objections to the trial court's evidentiary rulings and challenges to alleged violations of state statutes.   Petitioner did not claim constitutionally ineffective assistance of counsel on direct appeal.
>
> Petitioner's speedy trial claim is not argued as a federal constitutional claim under *Barker v. Wingo*, 407 U.S. 514 (1972).  Instead the Petitioner claims that the State violated W. Va. Code §§ 62-2-12 and 62-3-1. (Resp't Ex. 4 at 26).  Although Petitioner invoked his right to a speedy trial, which is a federal constitutional right, Petitioner's argument did not rely upon [] 1) a specific federal constitutional right; 2) a particular constitutional provision; 3) a federal constitutional case; or 4) a state case raising a pertinent constitutional issue.  See Martin v. Solem, 801 F.2d 324, 330 (8th Cir. 1986).

Petitioner's grounds for relief challenging the trial court's evidentiary rulings were also argued as violations of state law.  The Petitioner failed to invoke any substantive federal issues.  Moreover, Petitioner's claims regarding the trial court's evidentiary rulings have morphed from challenges against the trial court's ruling in state court to challenges against the substance of the challenged evidence in the instant federal petition.

With regard to Petitioner's Fourth Amendment claim, although it was presented to the state court as such and as a federal constitutional violation, Petitioner is not entitled to relief on this claim in federal habeas.  See Stone v. Powell, 428 U.S. 465 (1976).

(Id. at 10-11).

Based upon a review of the claims raised in Petitioner's federal petition and those raised in his direct appeal, it appears that Petitioner did raise federal constitutional claims in his direct appeal concerning the alleged denial of his right to a speedy trial under the Sixth and Fourteenth Amendments, and the alleged violation of his Fourth Amendment right to be free from unreasonable searches and seizures, which are again raised in Grounds One and Three of his federal petition.  Thus, those claims have been properly exhausted in accordance with the requirements of 28 U.S.C. § 2254(b)(1)(A).

The undersigned notes, however, that, in Ground Three of his federal petition, Petitioner also raises a claim of ineffective assistance of counsel concerning his trial counsel's handling of the search and seizure issues, which was not raised in his direct appeal.  Thus, the ineffective assistance of counsel claim has not

been exhausted.

Furthermore, the remaining grounds for relief in Petitioner's federal petition, Grounds Two, Four, Five, Six and Seven, inclusive of sub-parts, involve claims that were not specifically addressed in Petitioner's direct appeal as federal constitutional claims, if they were addressed at all therein.   Accordingly, because Petitioner has not addressed these grounds for relief, in their present form, to the highest state court, they are unexhausted.

The undersigned proposes that the presiding District Judge **FIND** that Grounds One and Three of Petitioner's federal petition, with the exception of the ineffective assistance of counsel claim raised in Ground Three, have been properly exhausted.   The undersigned further proposes that the presiding District Judge **FIND** that the remaining grounds for relief contained in Petitioner's federal petition have not been exhausted.

On April 9, 2008, Petitioner filed a Response to Respondent's Motion to Dismiss (# 14), in which Petitioner asserts that there is no effective or adequate legal process for addressing his grounds for habeas corpus relief at the state court level, and that he should be allowed to proceed with his federal petition, notwithstanding the failure to exhaust all of his grounds for relief.   Petitioner further asserts that "[i]nordinate and unjustified delay in state proceedings allows a state prisoner to seek federal relief before state proceedings are completed.   <u>See</u>

14

Jackson v. Duckworth, 112 F.3d 878, 881 (7th Cir. 1996) ("Inordinate, unjustifiable delay in a state-court collateral proceeding excuses the requirement of petitioners to exhaust their state-court remedies before seeking federal habeas corpus relief.") (# 14 at 10-11).

Section 2254(b)(1)(B) of Title 28 of the United State Code allows a federal court to review unexhausted habeas corpus claims where "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."  It appears that Petitioner is asserting that the alleged inordinate delay in resolving his third Wood County habeas corpus petition has rendered the state corrective process ineffective to protect his rights.

Initially, Respondent did not file a reply brief.  However, on September 26, 2008, the undersigned ordered Respondent to file a reply addressing Petitioner's argument that he should be excused from the exhaustion requirement, due to inordinate delay in the resolution of his state habeas corpus proceedings.  (# 15).

Respondent's reply brief, which was filed on October 10, 2008, argues that any delay in the resolution of Petitioner's state habeas proceedings is solely attributable to Petitioner because he has repeatedly moved for the appointment of new "advisory" counsel to assist him, and because Petitioner has taken no steps to move the case forward to an evidentiary hearing.  The reply states in

pertinent part:

> Despite having portions of his huge court file personally delivered to him by his "advisory" counsel, who also negotiated a compromise with the warden to allow him to bring these documents to the Petitioner faster, the Petitioner claims that the State and his counsel are blocking access to his records. This simply is not true. Throughout the eight years Petitioner's habeas has been pending, he has enjoyed full access to them. Indeed, they have been hand-delivered to him whenever he asks.

> A review of the records reveals that this Petitioner is disruptive and litigious. He now seeks to benefit from his obstructive conduct. In fact, any wounds suffered by the Petitioner are self-inflicted. The Petitioner is his own counsel, employing members of the bar as "advisory counsel." [Footnote 2 - He has yet to call upon present advisory counsel Jack Hickock for legal advice.] He has gone through these attorneys like water, accusing each of conspiring with the State to undermine his case. [Footnote 3 - Recently in an attempt to move this case forward, the state habeas court appointed yet another attorney, Joseph Troisi. Mr. Troisi's only duty was to see whether the Petitioner was in need of counsel.] Since he is his own attorney, the duty to go forward is his. If his case has not progressed it is his doing, not the State's.

(# 18 at 2-3). Respondent then provides the following time line of events that have occurred in Petitioner's third state habeas corpus proceeding:

> Petitioner filed the third of three state habeas petitions on July 14, 2000. [Footnote omitted]. The state habeas court first appointed Ira Haught as counsel, "for limited purposes" on July 11, 2000. On August 14, 2000, at Petitioner's request, Reggie Bailey assumed Mr. Haught's responsibilities. He remained Petitioner's advisory counsel until November 26, 2002. (Resp't Ex. 11)[Footnote omitted]. On September 19, 2000, Petitioner filed a Motion for Clarification and Appointment of Advisory Counsel in which he informed the state habeas court that he had met with Mr. Bailey, and that Mr. Bailey had explained his options. After this meeting, the Petitioner chose to proceed pro se, and asked the

16

Court to appoint Mr. Bailey as advisory counsel. (Resp't Ex. 12.)  Petitioner filed motions for substitution of advisory counsel on April 17, 2001, June 5, 2001, August 7, 2001, and September 11, 2001.

On November 11, 2002, the court substituted Kanawha County Public Defender Jack Hickock for Mr. Bailey. It ordered him to advise the Petitioner as to whether he should proceed <u>pro se</u>, or by counsel, his rights under <u>Losh v. McKenzie</u>, 277 S.E.2d 606 (W. Va. 1981), and to determine whether the Petitioner should file an amended petition. (Resp't Ex. 13.)  Upon his appointment, Mr. Hickock obtained Petitioner's court file.  According to his motion to withdraw, the file was enormous, and required substantial time and effort, by several different individuals, to organize. [Footnote 6 - Mr. Hickock included a picture of the court file. (Resp't Ex. 16.)] (Resp't Ex. 14.)

On July 11, 2003, Mr. Hickock wrote a letter to the State Bar's Office of Disciplinary Counsel requesting advice as to the parameters of his role in the Petitioner's proceedings. (Resp't Ex. 15.) On July 31, 2003, Mr. Hickock was advised that the Petitioner was his own counsel.  Mr. Hickock should explain the limits of his role as advisory counsel, keep a copy of the case file, and "be prepared to present the case." (<u>Id.</u>)

The record demonstrates that Mr. Hickock made every effort to transport the Petitioner's files to the jail. When the Petitioner notified him that he was finished with these documents, Mr. Hickock would drive to the jail, pick up the portion of the file Petitioner was finished with, and give him another box.

The Petitioner was not satisfied.  He wanted to receive his legal materials directly from counsel at the jail without a prior search, which he claims violated his constitutional rights.  Pursuant to Policy Directive 503.00, the warden denied his request. [Footnote 7 - Policy Directive 503.00 prohibits direct exchanges of materials between counsel and his client.  The materials are searched for contraband before given to the inmate. The inmate must be present during this search. (Resp't Ex. 17).] As a compromise, Mr. Hickock was permitted to bring Petitioner's legal materials to the jail via the Administrative Wing.  The Petitioner rejected this compromise, and filed a bar complaint against Mr. Hickock

17

alleging that by submitting to a contraband search, he revealed confidential work-product to the State.

* * *

On August 14, 2007, the state habeas court convened a status hearing at which the Petitioner requested copies of his post-sentencing transcripts, and one-hundred seventy-one (171) pages of materials alleged[ly] left out of Petitioner's court file. [Footnote 8 - This number was drastically reduced to twenty (20) documents. <u>See</u> Petitioner's Response to Respondent's Motion to Dismiss at 5.] Petitioner also requested that Judge Reed, the state trial and habeas judge, recuse himself from any further proceedings. (Resp't Ex. 18.)  There were no conversations about the substance of his claims, nor did he request a date certain for his omnibus hearing.

(<u>Id.</u> at 4-6).

On October 28, 2008, Petitioner sought leave to file a sur-reply, which was granted by the undersigned. (# 19).  Petitioner's sur-reply disputes Respondent's assertion that Petitioner has had full access to his court file over the last eight years and contends that he "is still being deprived access to court-appointed trial counsel's case file . . . ."  (Id. at 2-3).  He also challenges Respondent's assertion that delays attributable to his court-appointed lawyers are also attributable to him.  (<u>Id.</u> at 4).

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated inordinate delay caused by the State sufficient to justify a waiver of the exhaustion requirement.  So long as he is proceeding <u>pro se</u> in his state court habeas corpus matter, notwithstanding the appointment of "stand-by" or "advisory" counsel, Petitioner is responsible for the

18

prosecution of his state habeas case.  Petitioner may request an omnibus hearing before the state habeas court, and may also seek another writ of mandamus if he believes the state court is not taking appropriate action on his state petition.  Petitioner still has available means under state process for raising his constitutional claims, and as noted by the Supreme Court, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation . . . ." Darr v. Burford, 339 U.S. 200, 204 (1950), cited in Patterson v. Leeke, 556 F.2d 1168, 1170 (4th Cir. 1977).

Thus, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's request to waive the exhaustion requirement.  It is further respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion to Dismiss for Failure to Exhaust State Court Remedies (# 12), in whole or in part, subject to the Petitioner's response during the objection period, as explained below.

Petitioner is left with two choices.  Because he has exhausted his grounds for relief concerning the alleged denial of a speedy trial and his search and seizure claims, Petitioner may elect to proceed with his section 2254 petition on only those two grounds for relief.  However, because 28 U.S.C. § 2244(a) provides that a prisoner may only file one section 2254 petition, without obtaining

19

authorization from the appropriate United States Court of Appeals to file a second or successive petition, Petitioner risks losing the right to bring any of his currently unexhausted claims before this court in the future.

Petitioner's other choice is to accept the dismissal, without prejudice, of his current section 2254 petition, for failure to exhaust state court remedies, and to completely exhaust the available state court remedies as to each of his grounds for relief, including an appeal of any decision rendered by the Circuit Court of Wood County in Case No. 00-P-62, and to re-file a petition under section 2254 within the time limitation set forth in 28 U.S.C. § 2244(d).[1]   Petitioner should provide the court with written notice of his decision during the objection period discussed in the following paragraph.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil

---

[1]   Based upon the undersigned's calculation, at the time Petitioner filed his third Wood County habeas corpus petition, 194 days had run under the one-year statute of limitations for filing a section 2254 petition, as set forth in section 2244(d)(1).   The statute of limitations is presently tolled, pending the resolution of Petitioner's third Wood County habeas corpus petition, and a timely appeal therefrom.   Thus, when Petitioner's state habeas proceedings have concluded, he should have approximately 171 days remaining in which to re-file a section 2254 petition.

Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party, Chief Judge Goodwin and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and counsel of record.

<table>
<tr><td>December 12, 2008</td><td><i>Mary E. Stanley</i></td></tr>
<tr><td>Date</td><td>Mary E. Stanley<br>United States Magistrate Judge</td></tr>
</table>